```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Rebecca L. Jenkins,               :

    Plaintiff,                :

   v.                            :        Case No.  2:15-cv-1199

Carolyn W. Colvin, Acting         :        JUDGE JAMES L. GRAHAM
Commissioner of Social Security,           Magistrate Judge Kemp

    Defendant.                :

<u>REPORT AND RECOMMENDATION</u>

### I.  <u>Introduction</u>

Plaintiff, Rebecca L. Jenkins, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits.  That application was filed on July 26, 2011, and alleged that Plaintiff became disabled on July 2, 2010.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on September 11, 2013.  In a decision dated October 17, 2013, the ALJ issued a decision denying benefits.  That became the Commissioner's final decision on February 5, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on October 30, 2015. Plaintiff filed a statement of specific errors on November 25, 2015, to which the Commissioner responded on March 1, 2016.  No reply brief has been filed, and the case is now ready to decide.

### II.  <u>The Lay Testimony at the Administrative Hearings</u>

Plaintiff, who was 46 years old as of the date of the hearing and who is a high school graduate, testified as follows. Her testimony appears at pages 38-57 of the administrative record.

First, Plaintiff said that her last regular employment was as a housekeeper in a nursing home. She could not recall exactly when she stopped working there. She cleaned rooms and on rare occasions helped the aides with patient care. Before that, she had worked for a short time at a flower shop and worked for four years at a parts assembly plant which made interior parts for trucks. That job involved standing, walking, and heavy lifting. Lastly, she had done part-time cashier and stock clerk work at a grocery store.

When asked about the reasons she could no longer work, Plaintiff said that she was tearful every day and had difficulty sleeping due to racing thoughts. She needed to plan out trips to the store due to worry about panic attacks. She could not concentrate enough to watch a movie on television. She no longer read and did not associate with friends or family. Plaintiff cooked and did dishes, laundry, and vacuuming. She avoided using her right arm for lifting because of painful tennis elbow. She also described symptoms of OCD and said she had panic attacks three times per week and would cry often for no reason. She was seeing a counselor and also attending a support group for people with anxiety.

### III. The Medical Records

The medical records in this case are found beginning on page 191 of the administrative record. The pertinent records can be summarized as follows. It is worth noting that although Plaintiff also summarizes various medical records in her statement of errors, her argument does not depend upon the content of any of those records, and it addresses only mental impairments.

The first record pertaining to psychological conditions is a clinical interview done by Dr. Virgil in 2011. Plaintiff reported that she was disabled due to physical conditions. She

reported crying spells, difficulty sleeping, and diminished appetite. She had no anxiety symptoms. Her insight and judgment were adequate. Dr. Virgil diagnosed an adjustment disorder with depressed mood and rated Plaintiff's GAF at 65. He did not identify any significant impairment in work-related abilities. (Tr. 211-16).

Plaintiff did seek treatment for psychological difficulties, which she had not done prior to seeing Dr. Virgil. Notes from her regular physician in 2012 showed her symptoms being adequately managed with medication. In 2013, she was diagnosed with both depression and a panic disorder with agoraphobia, and she was encouraged to enroll in an anxiety management program. Progress notes from the Community Action Committee of Pike County Family Health Centers show that she experienced a number of significant events in 2012 and 2013 which contributed to her anxiety. Plaintiff also reported OCD symptoms. A note from her social worker dated July 26, 2013 indicated that Plaintiff had moderate emotional withdrawal and extremely severe depression. (Tr. 301). That person also filled out a form indicating that Plaintiff would miss three or more days of work per month due to psychologically-based symptoms and that she had marked impairments in three functional areas and had experienced repeated episodes of decompensation. (Tr. 302-06). Other notes from about the same time indicated her mood and thought processes were normal, however.

Two state agency psychologists reviewed the records and expressed opinions as to Plaintiff's mental functional capacity. Dr. Voyten found that Plaintiff did not have a severe mental impairment, based on the consultative report and the assigned GAF of 65. (Tr. 70). Dr. Waggoner concurred. (Tr. 81). Neither reviewer had the benefit of some of the later treatment notes or the forms completed by Plaintiff's counselor.

IV. The Vocational Testimony

Lynne Kaufman was the vocational expert in this case. Her testimony begins at page 58 of the administrative record.

Ms. Kaufman described Plaintiff's past employment as a medical cleaner as a medium strength unskilled job. The other job she identified was upholstery trimmer, which was semi-skilled and medium.

Ms. Kaufman was then asked some questions about someone with Plaintiff's background and who could work at the light exertional level. That person could not do overhead reaching with the right arm. She said such a person could not do any of Plaintiff's past work, but could do some light cashiering jobs, clerical jobs, and assembly jobs.

Next, she was asked to consider a person who, in addition to those limitations, could not be subjected to strict time or production demands and was limited to simple, repetitive tasks in an environment which did not require more than occasional superficial contact with supervisors and co-workers and no contact with the public and which had static work processes and procedures. Ms. Kaufman said that someone with those restrictions could not perform Plaintiff's past relevant work or the cashier job, but could do a reduced number of office helper jobs and could work as a marker. If, however, the person would be off task for 10% of the time or could not lift more than five pounds with the dominant hand, that person could not be employed. The same would be true if a limitation to occasional handling and grasping with the dominant hand were added to the hypothetical, and if someone missed three days of work per month.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-28 of the administrative record. The important findings in that decision are as follows.

-4-

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, and that she had not engaged in substantial gainful activity since her alleged onset date of July 2, 2010.  Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including right elbow epicondylitis, degenerative changes of the right acromioclavicular joint, severe to morbid obesity, Bell's palsy, an affective disorder, an obsessive-compulsive disorder, and an anxiety disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform the exertional demands of light work but with limitations.  Those included an inability to reach overhead with her right arm and the capacity to perform simple, repetitive tasks in an environment which did not require more than occasional superficial contact with supervisors and co-workers and no contact with the public and which had static work processes and procedures.

With these restrictions, the ALJ concluded that although Plaintiff could not perform her past relevant work, she could perform the jobs identified by the vocational expert, including office clerical worker, assembler, and marker.  The ALJ further found that these jobs existed in significant numbers in the regional and the national economy.  Consequently, the ALJ determined that Plaintiff was not entitled to benefits.

### VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises a single assignment of error, stated this way: "The ALJ erred in

relying upon the vocational expert's testimony when the hypothetical question presented does not adequately represent Plaintiff's limitations." This issue is evaluated under the following legal standard.

    <u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Plaintiff's sole assignment of error focuses on what she deems to be contradictory findings made by the ALJ. She notes that in one portion of the administrative decision (which happens to be the section where the Listing of Impairments is discussed),

the ALJ, after reviewing evidence that suggested only mild impairments in the area of social functioning, found, giving Plaintiff the benefit of the doubt, that she had a marked impairment in that area. (Tr. 16-17). He also found that she had moderate difficulties with regard to concentration, persistence, and pace (Tr. 17). Again, the ALJ noted that both the state agency reviewers found no difficulties in this area, and that their opinions were consistent with the totality of the evidence, but he gave her "the benefit of all reasonable doubt" in making his finding. (Tr. 18). It is this latter limitation that, according to Plaintiff, was not accommodated by the ALJ's residual functional capacity finding (even though he limited Plaintiff to doing simple repetitive tasks in a static work environment). This, argues Plaintiff, is inconsistent with the Court of Appeals' decision in Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010) and several decisions from this Court interpreting Ealy, all of which hold that deficiencies in concentration, persistence, and pace are not necessarily accounted for by limiting a claimant to the performance of simple, repetitive tasks.

    Plaintiff's argument is directly refuted by prior rulings of this Court. For example, the Court said this in Dotson v. Comm'r of Social Security, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014), adopted and affirmed 2015 WL 1006087 (S.D. Ohio March 6, 2015):

> The primary problem with that argument is that this case differs significantly from Ealy in term of the evidence which was before the ALJ and the findings which were made. In Ealy, the opinion evidence accepted by the ALJ was a residual functional capacity made by two sources which addressed twenty separate mental functional abilities; the sources found the claimant moderately limited in eight of them, two of which suggested limitations in maintaining attention and concentration for extended periods and in performing at a consistent pace. Here, by contrast, the finding to which Plaintiff points came not from a residual

>functional capacity evaluation but from the state agency reviewer's assessment of the "B" criteria, which compare the severity of a claimant's mental limitations to the Listing of Impairments. That assessment is not, as the ALJ specifically pointed out (Tr. 43), a residual functional capacity assessment. See <u>Sutherlin v. Comm'r of Social Security</u>, 2011 WL 500212, *1 (E.D. Mich. Feb.8, 2011)("the limitations noted in the B criteria at the second and third steps differ from a residual functional capacity assessment, in that the latter requires a detailed assessment of a variety of functions that fall within each of the four broad categories listed in the B criteria"). When an ALJ specifically differentiates between the two findings and does not incorporate those limitations into his residual functional capacity determination, <u>Ealy</u> is inapplicable. See <u>Williams v. Comm'r of Social Security</u>, 2014 WL 63919, *25 (E.D. Tenn. Jan.8, 2014) ("As for Plaintiff's argument with respect to <u>Ealy</u>, the ALJ did not determine Plaintiff had moderate limitations in concentration, persistence and pace in fashioning his RFC, and the proposition that simple, routine, repetitive tasks does not account for such limitations does not apply").

The ALJ here specifically noted that his step three findings did not constitute a residual functional capacity finding. (Tr. 19). He also concluded that it would be consistent with the record to find either mild or no restrictions in the area of concentration, persistence, and pace, based on the opinions of the consultative and reviewing psychologists, and he found that her symptoms were "generally stable, tolerable, and well controlled." (Tr. 22). Also, she testified to improvement of her symptoms with medication and at times denied experiencing anxiety or depression - a statement that is corroborated by the record. Finally, he reviewed her activities of daily living, including work activities, and found that the mental residual capacity which he attributed to her was consistent with those activities. He also placed great weight on the opinions of the state agency and consultative reviewers in the portion of the

decision dealing with residual functional capacity. (Tr. 24).

Plaintiff does not claim that any of the ALJ's factual findings on this issue are unsupported by the evidence. She does not argue that he should not have relied on the consultative and state agency reviewers to the extent that he did. She does not even argue that his mental residual functional capacity finding is unsupported by substantial evidence. Because she limits her argument to the apparent inconsistency between the findings the ALJ made as to the "B" criteria of the relevant sections of the Listing of Impairments, which are not residual functional capacity findings, and the restrictions which the ALJ incorporated into the hypothetical question posed to the vocational expert, and because that argument has no merit, the Court should overrule the statement of error and affirm the ALJ's decision.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u><br>
United States Magistrate Judge